UNITED STATES BANKRUPTCY COURT                        **NOT FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re                                                 Chapter 11


SOUNDVIEW ELITE LTD., *et al.*,
                                                      Case No. 13-13098 (MKV)
                                                      (Jointly Administered)

                                Debtors.
-----------------------------------------------------------------x

CORINNE BALL, as Chapter 11 Trustee of
SOUNDVIEW ELITE LTD.,

                                Plaintiff.            Adv. Proc. No. 14-01923 (MKV)


                    v.


SOUNDVIEW COMPOSITE LTD.,

                                Defendant.
-----------------------------------------------------------------x


DECISION ON THE TRUSTEE'S SUPPLEMENTAL MOTION
FOR SUMMARY JUDGMENT AS TO PURPORTED AFFIRMATIVE DEFENSES
ASSERTED BY THE DEFENDANT


APPEARANCES:

JONES DAY
*Counsel for Plaintiff Corinne Ball, as Chapter 11
Trustee of Debtor Soundview Elite Ltd.*
250 Vesey Street
New York, New York 10281-1047
By:     William J. Hine, Esq.
        Michael J. Dailey, Esq.


SHER TREMONTE LLP
*Counsel for Defendant Soundview Composite, Ltd.*
80 Broad Street, 13th Floor
New York, New York 10004
By:     Robert Knuts, Esq.

MARY KAY VYSKOCIL
UNITED STATES BANKRUPTCY JUDGE

Pending before the Court is the Trustee's Supplemental Motion for Summary Judgment as to Purported Affirmative Defenses Asserted by the Defendant (the "Supplemental Summary Judgment Motion" or the "Supp. Mtn.") [ECF No. 123].[1]  The Supplemental Summary Judgment Motion is addressed to the sole issue remaining unresolved after a January 4, 2016 decision by the Honorable Robert E. Gerber, the Decision on Motions for Summary Judgment and Asset Freezing Preliminary Injunction (the "Summary Judgment Decision" or the "Summ. Judg. Dec'n") [ECF No. 88], in which he granted partial summary judgment to the plaintiff, the Trustee (as defined below) with respect the Debtor's Redemption Request (as defined below) issued to the defendant.  On January 19, 2016, Judge Gerber also issued the Order Granting Partial Summary Judgment (the "Summary Judgment Order" or the "Summ. Judg. Order") [ECF No. 96].

In her Supplemental Summary Judgment Motion, the Trustee seeks a ruling that, by reason of its Redemption Request, the Debtor, Soundview Elite Ltd. ("Elite") is entitled to recoup the entirety of the assets maintained by Composite in the Wilmington Trust Account (as

---

[1] In support of her Supplemental Summary Judgment Motion, the Trustee filed a memorandum of law (the "Supplemental Brf." or the "Supp. Brf.") [ECF No. 124] and the declaration of Michael J. Dailey (the "Dailey Dec'l.") [ECF No. 125].  The defendant, Soundview Composite Ltd. ("Composite") opposes the relief sought in the Supplemental Summary Judgment Motion and has submitted a memorandum of law in support of its opposition (the "Supplemental Opposition Brf." or the "Supp. Opp. Brf.") [ECF. No. 127].  In response to Composite's Supp. Opposition Brf., the Trustee filed a reply memorandum of law in further support of the Supplemental Summary Judgment Motion (the "Supp. Reply Brf".) [ECF No. 129].  In accordance with Local Bankruptcy Rule 7056-1(B), the Trustee filed a statement of undisputed material facts, dated July 8, 2016 ("Trustee's Supp. Stmt. of Facts" and together with the Supp. Mtn., the Supp. Brf., the Dailey Dec'l and the Supp. Reply Brf., the "Trustee's Supplemental Motion Papers") [ECF No. 130].  In addition, Composite filed a counterstatement of undisputed facts, dated June 21, 2016 ("Composite's Supp. Stmt. of Facts" and together with the Opp. Brf., "Composite's Supplemental Opposition Papers") [ECF No. 128].  On August 11, 2016, the Court heard argument on the Supplemental Summary Judgment Motion and Composite's opposition thereto (the "Supplemental Summary Judgment Hearing").

defined below), and that, contrary to the argument advanced by Composite, there are no valid liabilities of Composite which operate to reduce the amounts Elite is entitled to recover. For the reasons set forth below, the Court concludes that the Supplemental Summary Judgment Motion should be granted and that the Trustee is entitled to recover all of the remaining assets currently held by Composite in the Wilmington Trust Account.

## I.   **BACKGROUND**

This adversary proceeding concerns a transaction between two related Soundview entities whereby one entity, Elite, purchased shares issued by Composite and, several years later, issued a request to redeem those shares. The dispute arose as a result of Composite's failure to honor Elite's redemption request. As particularized below, in his Summary Judgment Decision, Judge Gerber found that Composite had failed to comply with its obligation to honor Elite's redemption request and that Composite owes Elite the Net Asset Value (as defined below) of Elite's shares in Composite as of the close of business on September 30, 2011. *See* Summ. Judg. Order at ¶¶ 2(j), 2(l). The Summary Judgment Decision left unresolved "the amount of Elite's entitlement, and the extent to which other creditors' claims are senior to, or *pari passu* with, Elite's claims." Summ. Judg. Dec'n at 79. This issue is now before the Court on the Supplemental Summary Judgment Motion.

### A.   The Parties

Elite and Composite each is a mutual fund, registered in the Cayman Islands as an exempted open-ended investment company. *See* Complaint at ¶¶ 3, 5; Answer at ¶ 5. All of the assets of Composite are maintained in an account at Wilmington Trust Company (the

3

"Wilmington Trust Account").  *See* Complaint at ¶ 7; Answer at ¶ 7.

At the time of the redemption request at issue, Soundview Capital Management Ltd. ("SCM") was both the majority shareholder of Elite (*see* Complaint at ¶ 4; Answer at ¶ 4) and owner of all of the voting shares of Composite (*see* Trustee's Statement of Undisputed Facts in Support of the Trustee's Motion for Summary Judgment Pursuant to Local Bankruptcy Rule 7056-1(B), May 19, 2014 (the "Trustee's Stmt. of Facts") at ¶ 4 [ECF No. 12]; Response of Defendant to the Trustee's Statement of Undisputed Material Facts, June 16, 2014 ("Composite's Stmt. of Facts") at ¶ 4) [ECF Doc. No. 20].  During this time, SCM also acted as investment manager to both Elite (*see* Trustee's Stmt. of Facts at ¶ 18; Composite's Stmt. of Facts at ¶ 18) and Composite (*see* PPM (as defined below) at 1).  Beginning in or around June 2008, SCM was indirectly owned by Fletcher Asset Management, Inc. ("FAM"), which is owned by Alphonse ("Buddy") Fletcher, Jr. ("Fletcher").  *See* Complaint at ¶ 4; Answer at ¶ 4.

On September 24, 2013 (the "Petition Date"),[2] Elite and five related funds (collectively, the "Debtors")[3] commenced a voluntary case under chapter 11 of the Bankruptcy Code.  Corinne Ball was appointed as chapter 11 trustee for the Debtors (the "Trustee") after this Court removed Fletcher and others under Fletcher's control from possession.  *See In re Soundview Elite, Ltd.*, 503 B.R. 571 (Bankr. S.D.N.Y. 2014) (Gerber, J.) (providing for the appointment of a chapter 11 trustee).  Composite is not a debtor before this Court or any other court.

---

[2] On the Petition Date, the Debtors' chapter 11 cases were assigned to the Honorable Robert E. Gerber.   Due to Judge Gerber's retirement on January 31, 2015, the Debtors' chapter 11 cases were re-assigned to Chief Judge Cecilia G. Morris.  On April 8, 2016, the Debtors' chapter 11 cases, and the adversary proceedings commenced thereunder, were re-assigned to the Honorable Mary Kay Vyskocil.

[3] The Debtors include Elite, Soundview Premium, Ltd., Soundview Star, Ltd., Elite Designated, Premium Designated and Star Designated.

In January 2014, Peter Anderson and Matthew Wright, in their capacity as the Joint Official Liquidators for Elite, Soundview Premium Limited and Soundview Star Limited, appointed by the Grand Court of the Cayman Islands (the "JOLs"), filed an emergency motion (the "Emergency Motion") seeking a temporary restraining order freezing approximately $3.875 million in Composite's Wilmington Trust Account. *See* The Joint Official Liquidators' Emergency Motion for Temporary Restraining Order, January 20, 2014 [Case No. 13-13098, ECF No. 150]. At the hearing on the Emergency Motion, Judge Gerber ordered that the Wilmington Trust Account be frozen to maintain the *status quo* pending his ruling on a separate motion filed by the JOL and others to stay the Bankruptcy Court proceedings, which motion was subsequently denied. *See* Transcript ("Tr.") of January 21, 2014 Hearing at 13:6-9 [Case No. 13-13098, ECF No. 157]. Pursuant to the Order Continuing Asset Freeze Injunction, dated January 19, 2016 (the "Wilmington Trust Account Order"), Judge Gerber subsequently directed that the assets held in the Wilmington Trust Account "shall continue to be frozen until final adjudication of the claims in this Adversary Proceeding and the entry of a final judgment by the district court respecting Composite's duty to make payment on the Trustee Plaintiff's claims." Wilmington Trust Account Order at 2 [Case No. 13-13098, ECF No. 95]. All of Composite's assets held in the Wilmington Trust Account have been frozen since January 2014.

At the Court's request, the parties have jointly submitted an account statement reflecting that the balance in the Wilmington Trust Account, as of July 31, 2016, is $3,725,607.54. *See* ECF No. 133.

### B.    Elite's Purchase of the Composite Shares

In May 2007, Composite issued a Confidential Private Placement Memorandum (the

"PPM"), which set forth the terms and conditions of a stock offering whereby Composite would

offer six classes of non-voting shares.  *See* Trustee's Stmt. of Facts at ¶ 1; Composite's Stmt. of

Facts at ¶ 1.  In August 2009, Elite subscribed to the shares issued under the PPM by purchasing

15,311 Class H Shares of Composite for approximately $12.87 million (the "Composite

Shares").[4]  *See* Stmt. of Facts at ¶¶ 2, 19; Affidavit of Alphonse Fletcher, Jr., dated June 16, 2014

(the "Fletcher Affidavit") at ¶ 6 [ECF No. 19].  Elite is the only holder of Composite Class H

shares.  *See* Trustee's Stmt. of Facts at ¶ 21; Composite's Stmt. of Facts at ¶ 21.

### C.    The Adversary Proceeding

By complaint, dated April 1, 2014 (the "Complaint"), the Trustee, on behalf of Elite,

commenced this adversary proceeding to recover the amount allegedly owing to Elite based on

its redemption request [ECF No. 1].  In the Complaint, the Trustee alleges that, on or around July

2011, Elite forwarded a request to redeem its remaining holdings of the Composite Shares, with

a requested redemption date of August 31, 2011 (the "Redemption Request"), and that

Composite refused, without legal basis, to honor its contractual obligation to redeem the

Composite Shares.  *See* Complaint at ¶¶ 14, 33.  The Trustee also sought an accounting to

determine the value of the remaining cash and non-cash assets of Composite, and whether some

or all of such assets should also be turned-over to the Trustee as part of the amount owing to

---

[4] In July 2010, Elite delivered a request to redeem approximately one half of its holding of Composite Shares.  That request was honored, and Elite thereby reduced its holdings in Composite to 7,191.06 shares.  *See* Trustee's Stmt. of Facts at ¶ 21; Composite's Stmt. of Facts at ¶ 31-32; Answer at ¶ 32.

Elite. *See* Complaint at ¶¶ 50, 51.

On May 2, 2014, Composite filed an answer to the Complaint (the "Answer"), and denied, *inter alia,* that Elite had issued a redemption request and that Elite is entitled to any funds in connection therewith. *See* Answer at ¶ 33 [ECF No. 9].[5]

### 1.   *The Trustee's Summary Judgment Motion*

On May 19, 2014, the Trustee moved for summary judgment declaring, *inter alia*, that (a) Elite properly redeemed its interest in the Composite Shares, (b) Composite failed to comply with its obligation to honor the Redemption Request, and (c) Composite owes Elite the Net Asset Value (as defined below) of Elite's investment in Composite. *See* Notice of Trustee's Motion for Summary Judgment, dated May 19, 2014 (the "Summary Judgment Motion") [ECF No. 11]; Memorandum of Law in Support of the Trustee's Motion for Summary Judgment, dated May 19, 2014 (the "Summ. Judg. Brf.") [ECF No. 13].   In her Summary Judgment Motion, the Trustee also sought an order directing Composite to (i) turn over the amount owing to Elite on account of the Redemption Request and (ii) provide a complete accounting of Composite's finances.  In addition, the Trustee sought an award to Elite of its costs and expenses, including attorneys' fees.

---

[5] Simultaneously with filing its Answer, Composite moved to withdraw the reference of this adversary proceeding. *See* Notice of Motion to Withdraw the Reference, May 2, 2014 (the "Motion to Withdraw the Reference") [ECF No. 8].  On July 3, 2014, the United States District Court for the Southern District of New York (the "District Court") denied, without prejudice, the Motion to Withdraw the Reference, and concluded that "judicial economy and efficiency are better served by having Judge Gerber determine whether this is a legitimate turnover action, and to do so in the context of deciding plaintiff's motion for summary judgment."  *Corinne Ball, as Chapter 11 Trustee of Soundview Elite, Ltd. v. Soundview Composite Ltd. (In re Soundview Elite Ltd.)*, No. 14-cv-3179 (SAS) (S.D.N.Y. July 3, 2014).   The District Court noted that "if this matter is deemed non-core and proceeds to trial, defendant can renew its request to withdraw the reference at that time."  *Id.* at 18.  Subsequent to the Summary Judgment Decision and Summary Judgment Order, on April 13, 2016, Composite filed, in this Court, a Notice of Renewed Motion to Withdraw the Reference [ECF No. 104], but has not pursued its motion before the District Court.

Composite opposed the Trustee's Summary Judgment Motion and asserted that outstanding material issues of fact remain, including that the Trustee had not established that (i) Elite's Redemption Request was issued and complied with the governing documents; (ii) Composite waived a gating requirement; or (iii) the precise amount owing to Elite. *See* Defendant's Memorandum of Law in Opposition to Trustee's Motion for Summary Judgment, June 16, 2014 (the "Summ. Judg. Opp. Brf.") at 9, 22-27 [ECF No. 21]; Composite's Stmt. of Facts; the Fletcher Affidavit.

2. *The Summary Judgment Decision and Order*

On January 4, 2016, Judge Gerber issued his decision on the Summary Judgment Motion. The Court found that the Net Asset Value of Elite's investment, which it defined as the "Owed Amount," "effectively is everything Composite would have after the payment of Composite's creditor liabilities."  Summ. Judg. Dec'n at 1-2.  Judge Gerber concluded that no material issues of fact exist with respect to the following matters, and that the Trustee has established that:

a. Composite's only outside investor is Elite;

b. Elite duly requested a full redemption by no later than May 2012;

c. The trade date for Elite's redemption was September 30, 2011;

d. Composite's redemptions have never been suspended;

e. Composite's redemptions have never been gated;

f. There has been no reason for Composite to gate redemptions, since Composite has only one investor;

g. Composite had the right to gate redemptions, but never exercised that right;

8

    h.  Elite's redemption request was outstanding as of May 2012, and remains outstanding today;

    i.  The value of Elite's redemption request, as estimated by Composite, ranges from $5 million to $3.8 million, and thus is no less than $3.8 million; [6]

    j.  Composite failed to comply with its obligations to honor Elite's redemption request;

    k.  Composite must honor Elite's redemption request;

    l.  **Composite owes Elite the Net Asset Value of Elite's shares in Composite as of the close of business of September 30, 2011;** and

    m.  If less elaborate means to fix Elite's monetary entitlement are impractical, the Trustee is entitled to an accounting for the purposes of fixing Elite's entitlement as a consequence of its redemption demand.

*See* Summ. Judg. Order at ¶ 2, Summ. Judg. Dec'n at pp 79-80, (emphasis added).

Accordingly, Judge Gerber granted summary judgment to the Trustee "on all issues other than the amount of Elite's entitlement, and the extent to which other creditors' claims [against Composite] are senior to, or *pari passu* with, Elite's claims." Summ. Judg. Dec'n at 79. These are the issues now before the Court on the Trustee's Supplemental Summary Judgment Motion.

    3.  *Discovery on the Remaining Issues*

After issuing his summary judgment ruling, Judge Gerber held a status conference on January 7, 2016 (the "January Status Conference"), to "discuss what we need to do to tee up the

---

[6] Judge Gerber also explained that "Elite, as Composite's only shareholder, was entitled to the entirety of Composite's net assets. But declines in the value of those assets could (and likely would) result in the differences between the $5 million and $3.8 million figures. This could be confirmed or disproved in the trial to follow when Elite's exact entitlement will be determined." Summ. Judg. Dec'n at 48, n.155. By letter from counsel to the Trustee and counsel to Composite, dated August 18, 2016, (the "WTA Letter"), the parties informed the Court that the current amount reported by Wilmington Trust being held in the Wilmington Trust Account is $3,725,607.54. *See* ECF No. 133. As this amount falls below the lowest range (*i.e.* $3.8 million), this issue is no longer before the Court.

remaining issues for judicial determination." Tr. of January 7, 2016 Hearing at 5:16-17 [ECF

No. 94]. Specifically, Judge Gerber discussed with the parties "what discovery is required, what

information needs to be obtained *vis-à-vis* the claims of what I would call *bona fide* outside

creditors of Composite, the extent, if any, to which insiders are going to be asserting claims

against Composite, and, if there is not consensus on the issue of the priority of various competing

claims to what Composite might have left, how any legal issues vis-à-vis that would be judicially

determined." *Id.* at 5:21-6:3. After hearing from the parties, Judge Gerber directed the Trustee's

counsel to serve focused discovery requests on Composite addressed to the remaining issues

identified in his Summary Judgment Order and directed Composite to respond to the discovery

requests within ten calendar days.[7] *See id.* at 21:14-23.

    In response to the Trustee's discovery demands, Composite submitted Defendant's

Responses to Plaintiff's First Set of Interrogatories, dated January 22, 2016 (*see* Dailey Dec'l at

Exh. A) (the "Interrogatory Responses"), which include a Schedule A reflecting amounts

Composite alleges it owes as liabilities and amounts that should be set aside as reserves for

potential future obligations. On February 2, 2016, Composite produced the following six

documents, on which it relies to support its alleged liabilities and reserve amounts: (1) Financial

Services Agreement, dated as of December 31, 2010 (the "Financial Services Agreement") (*see*

Dailey Dec'l at Exh. B); (2) Soundview Composite, Ltd. Written Consent of the Board of

Directors (the "Board Consent Document") (*see* Dailey Dec'l at Exh. C); (3) Memorandum and

---

[7] Given Composite's prior failure to comply with Judge Gerber's orders and other attempts to delay an ultimate
adjudication of the adversary proceeding, discussed below, Judge Gerber warned Composite's counsel to admonish
Composite to comply the Court's directive to produce discovery within ten days: "if your guys keep screwing
around like this I will encourage . . . whoever is taking this case from me, to impose sanctions in a heartbeat." *See*
Tr. of January 7, 2016 Hearing at 22 [ECF No. 94].

Articles of Association of Soundview Composite, Ltd. (the "Articles of Association") (*see* Dailey Dec'l at Exh. D); (4) the PPM (*see* Dailey Dec'l at Exh. E); (5) the Investment Management Agreement (*see* Dailey Dec'l at Exh. F); and (6) an invoice of Sher Tremonte LLP to Composite, dated January 22, 2016 (*see* Dailey Dec'l at Exh. G) (the "Law Firm Invoice" and together with the Financial Services Agreement, the Board Consent Document, the Articles of Association, the PPM and the Investment Management Agreement, the "Composite Documents").

On April 8, 2016, this adversary proceeding was reassigned to the Honorable Mary Kay Vyskocil, upon her assuming judicial office. At a status conference on April 14, 2016, (the "April Status Conference"), soon after reassignment of the case and three months after the Trustee had served her discovery demands - - notwithstanding Judge Gerber's admonition to Composite's counsel - - Composite's counsel was unable to represent to the Court that Composite had produced all responsive documents.   Initially, Composite's counsel assured the Court, "I can also confirm that, to the extent the documents are sparse, I'm not aware of any other documents that are in my client's possession, custody, or control, that are responsive." *See* Tr. of April 14, 2016 Hearing at 29:2-4 [ECF No. 108].  However, as the April Status Conference progressed, Composite's counsel stated that he would appreciate more time to confirm with his client that Composite had no additional responsive documents. *See id.* at 36:3-17.  The Court then directed Composite's counsel to inform the Court by the following Monday of the status of Composite's discovery responses. *See id.* at 36:25-37:5.  Composite's counsel subsequently confirmed to the Court that Composite does not have in its "possession, custody or control any additional documents concerning the creditor claims and reserves identified by

11

Soundview Composite on Exhibit A to the answers to interrogatories dated January 22, 2016."

*See* Letter, dated April 18, 2016 [ECF No. 107]. Accordingly, all discovery concerning the

issues now before the Court is closed.

### D.    The Trustee's Supplemental Summary Judgment Motion and Composite's Opposition

Once discovery was concluded, counsel to Composite and the Trustee agreed, at a

subsequent status conference before the Court, that the parties would seek to resolve the

outstanding issue identified by Judge Gerber in the Summary Judgment Decision by means of

briefing a supplemental summary judgment motion to be filed by the Trustee.[8]   Thereafter, the

parties confirmed in writing that the outstanding issue would be best resolved by supplemental

summary judgment briefing.  *See* ECF Nos. 115, 116.  Accordingly, the Trustee filed the

Supplemental Summary Judgment Motion to obtain a ruling on the three outstanding issues

identified by Judge Gerber in the Summary Judgment Decision and Summary Judgment Order:

(1) the extent to which other creditors' hold claims against Composite; (2) the amount of any

such claims; and (3) the extent to which such claims have priority over the amount owing to

Elite.  *See* Supp. Brf. at 1, 2.  By the motion now before the Court, the Trustee seeks an order:

"(i) granting the Trustee summary judgment as to the entire amount of funds remaining in the

Wilmington Trust Account; (ii) denying in their entirety any defenses proffered or espoused by

Soundview Composite with respect to amounts it claims to owe third parties or that it alleges are

---

[8] *See,* Tr. of May 17, 2016 Hearing, at which the Court asked the parties "are you prepared to move for summary judgment, then, on the state of the record, or do we need a trial?"  *Id.* at 21:6-9 [ECF No. 119].  Counsel to the Trustee replied ". . . I was viewing it as a kind of a supplemental brief to our prior motion for summary judgment." *Id.* at 21:12-13.  Counsel to Composite stated ". . . that's one reason why I think legal briefs in the form of a supplemental summary judgment brief as to the remedy . . . would be useful."  *Id.* at 23:5-9.

required for reserves; (iii) transmitting to the District Court the Final Report and

Recommendation of this Court with respect to the Trustee's motion for summary judgment as to

the claims she asserted in the Adversary Complaint herein; and (iv) granting such other and

further relief as the Court deems just and proper."  Supp. Mtn. at 2.

In opposing the Trustee's Supplemental Summary Judgment Motion, Composite argues

that the amount owing to Elite should reflect a reduction based on the following alleged

liabilities of Composite, identified by Composite in Exhibit A to the Interrogatory Responses,

totaling $504,711 (collectively, the "Alleged Liabilities"):

| Alleged Liability | Entity to Whom Alleged Liability Purportedly is Owing | Alleged Liability Amount |
|---|---|---|
| Alleged SCM Liability | SCM | $45,221 |
| Alleged Fletcher Liability | Fletcher | $89,722 |
| Alleged Ladner Liability | George E. Ladner ("Ladner") | $89,444 |
| Alleged Saunders Liability | Floyd E. Saunders ("Saunders") | $96,103 |
| Alleged RFS Liability | Richcourt Fund Services ("RFS") | $101,001 |
| Alleged Richcourt USA Liability | Richcourt USA, Inc. ("Richcourt USA") | $56,000 |
| Alleged AFS Liability | Apex Fund Services ("AFS") | $3,000 |
| Alleged Law Firm Liability | Sher Tremonte LLP (the "Law Firm") | $24,170 |

Composite also argues that the amount owing to Elite should be further reduced by a $2.4

million amount to be held in reserve against Composite's claimed anticipated *future* financial

obligations, which are also identified in Exhibit A to the Interrogatory Responses, and are broken

down as follows (collectively, the "Alleged Reserve Amounts"):

13

| Alleged Reserve | Purpose for Alleged Reserve | Proposed Reserve Amount |
|---|---|---|
| Alleged D&O Reserves | payment to current directors and officers for indemnification obligations | $300,000 |
| Alleged Former D&O Reserves | payment to past directors and officers for indemnification obligations | $300,000 |
| Alleged Investment Advisor Reserves | payment to investment advisor for indemnification obligations | $200,000 |
| Alleged Financial Service Provider Reserves | payment to financial services provider for indemnification obligations | $200,000 |
| Future AP Costs Reserves | payment of future costs for this adversary proceeding | $300,000 |
| Alleged Privy Council Reserves | payment of Privy Council appeal cost-sharing/reimbursement accrual | $300,000 |
| Alleged Fletcher Int'l Reserves | payment of costs for *In re Fletcher International, Ltd.* and related matters | $400,000 |
| Alleged Cayman Reserves | payment of costs for the "Cayman insolvency proceedings matters" | $200,000 |
| Alleged Midanek Reserves | payment of costs for pursuit of claims against Midanek | $200,000 |

The Trustee argues, in reply, that there is no factual basis for any of these alleged liabilities or the reserves and that the amount owing to Elite should not be reduced by any of the Alleged Liabilities or the Alleged Reserve Amounts.

## II.   **DISCUSSION**

### A. Jurisdiction

Judge Gerber determined in the context of the Summary Judgment Motion that "the uncertainty as to the amounts to be turned over make use of the turnover power inappropriate,"

14

and accordingly, the Trustee's action to recover the amount owed to Elite is not a core

proceeding under section 542 of the Bankruptcy Code, but rather, is a non-core matter, such that

this Court cannot enter a final judgment.  *See* Summ. Judg. Dec'n at 30.  Thus, Judge Gerber

concluded that the Court would submit proposed findings of fact and conclusions of law to the

District Court, in accordance with 28 U.S.C. section 157(c)(1), and any final order or judgment

shall be entered by the District Court judge after considering this Court's proposed findings and

conclusions and after reviewing *de novo* those matters to which any party has timely and

specifically objected.  *See* Summ. Judg. Dec'n at 31.

Seeking what appears to be a second chance to litigate the matter Judge Gerber already

has decided, Composite argues that Judge Gerber's conclusions regarding the Court's

jurisdiction over the Trustee's turnover action require a denial of the Supplemental Summary

Judgment Motion at the outset for two reasons.  First, Composite argues that because Judge

Gerber held that the Trustee failed to state a valid turnover claim in the Complaint, there is no

"case or controversy" before this Court upon which the Trustee could be entitled to a judgment.

*See* Supp. Summ. Judg. Opp. Brf. at 5-8.  This contention mischaracterizes the Summary

Judgment Decision and is refuted by Judge Gerber's subsequent directions to the parties.  Judge

Gerber concluded that "[t]he Trustee may pursue her claims by a host of alternative means, but

she cannot do so by means of the Turnover Power."  Summ. Judg. Dec'n at 30.  The Court

reasoned that since the Trustee had mischaracterized her action to recover the amount owing in

connection with Elite's Redemption Request as a turnover action properly brought under

Bankruptcy Code section 542, her claims are therefore non-core matters.  *See* Summ. Judg.

Dec'n at 29-30.  Judge Gerber then proceeded to explain that although "the Trustee is unable to

15

invoke the Turnover Power, that does not mean that Composite can stymie, especially more than

for a short time, her efforts to enforce Composite's obligations.  The Court can still issue a

Report and Recommendation."  Summ. Judg. Dec'n at 31.  In support of his conclusion, Judge

Gerber cited 28 U.S.C. § 157(c)(1), which provides as follows:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is
> otherwise related to a case under title 11.  In such proceeding, the bankruptcy judge
> shall submit proposed findings of fact and conclusions of law to the district court,
> and any final order or judgment shall be entered by the district judge after
> considering the bankruptcy judge's proposed findings and conclusions and after
> reviewing *de novo* those matters to which any party has timely and specifically
> objected.

Manifestly, had Judge Gerber determined that there was no longer a "case or

controversy" pending before the Bankruptcy Court, he would not have gone on to issue an 80-

page decision in which he concluded that Elite is entitled to a recovery based on its Redemption

Request.  Nor would he have held the January Status Conference at which he directed the parties

to complete discovery with respect to the extent, value and priority of the Alleged Liabilities,

with a view toward further proceedings in the Bankruptcy Court.

Second, Composite asserts that the Bankruptcy Court may not determine the Net Asset

Value owing to Elite because there "is simply no precedent for this Court to adjudicate the

claims of Soundview Composite's existing and potential creditors for the purpose of issuing a

monetary award to the Trustee even in the absence of any actual claim for relief pending before

this Court."  Supp. Summ. Judg. Opp. Brf. at 11.  Other than pointing out that Composite is not a

debtor in this Court and that the parties to whom Composite claims to owe the Alleged Liabilities

are not parties to this adversary proceeding, Composite offers no argument or legal authority in

support of its position.  Again, Composite mischaracterizes the issue before this Court.

16

Significantly, both parties argued at the Supplemental Summary Judgment Hearing that the issue left open by Judge Gerber's Summary Judgment Decision is a determination of the Net Asset Value of Elite's Shares in Composite at the time of Elite's Redemption Request. *See* Tr. of August 11, 2016 Hearing [ECF No. 132]. In ruling on the Supplemental Summary Judgment Motion, this Court is issuing a report and recommendation to the District Court on the narrow issue as to the calculation of the amount owing to Elite: *i.e.* the Net Asset Value of Elite's Composite Shares that should have been redeemed pursuant to the Redemption Request as of September 30, 2011.[9] The Court is not determining claims that have been asserted by third parties who are not before the Court. Nowhere in Composite's Supplemental Opposition Papers does Composite offer a shred of evidence that any of its purported creditors, other than the Law Firm, have made a demand for payment, submitted a bill, or otherwise asserted a claim against Composite. At the Supplemental Summary Judgment Hearing, Composite's counsel conceded that Composite is unable to point the Court to specific sections of any specific documents to substantiate its arguments concerning the existence of the Alleged Liabilities. *See* Tr. of August 11, 2016 Hearing at 43:22-44:4 [ECF No. 132]. Composite's counsel was also unable to direct the Court to any specific documents supporting the Alleged Reserves at the hearing, and stated that the Alleged Reserves are based on Composite's directors' speculative representations as to potential liabilities that Composite might have. *See id.* at 49:14-50:8. Yet Composite's directors did not submit affidavits, declarations or provide any testimony concerning these alleged representations, or otherwise. In fact, Composite has yet to identify which of Composite's

---

[9] *See* Summ. Judg. Order at ¶ 2(l) ("Composite owes Elite the Net Asset Value of Soundview Elite's shares in Composite as of the close of business of September 30, 2011.").

17

directors even made such representations.

For the reasons discussed below, the Court finds that Composite's unsupported allegations that it owes amounts to third parties is nothing more than another baseless attempt to further delay honoring its contractual obligations to Elite.

### B. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure ("FRCP") is applicable to this case pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure ("FRBP") and provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Under FRCP 56(c), in order to preclude summary judgment, the fact in dispute must be material. Whether a fact is material is to be determined by substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If a fact is material, the court must then determine whether the dispute about that material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*  If the fact may be reasonably resolved in favor of either party, then there is a genuine factual issue that may only be resolved by the trier of facts and summary judgment must be denied. *See id.* at 250.  On considering a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-159 (1970).

After a party opposing a summary judgment motion has been afforded a sufficient time for discovery, summary judgment must be entered against the opposing party if such party fails to make a showing sufficient to establish the existence of an element essential to its case and on

which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There is no genuine issue concerning any material fact when "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

The summary judgment standard is interpreted in a way to support its primary goal of "dispos[ing] of factually unsupported claims or defenses." *Id.* at 323-24. The summary judgment movant meets its burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Application of the summary judgment procedure is not a disfavored procedural shortcut, but an integral part of the Federal Rules where there are no triable issues of fact. *See id.* at 327.

### C. Calculation of the Net Asset Value

Judge Gerber has found that "Composite owes Elite the Net Asset Value of Soundview Elite's shares in Composite as of the close of business of September 30, 2011." Summ. Judg. Order at ¶ 2(l). And, Judge Gerber determined that "[t]he Court can and does quantify the Trustee's claim at 'at least' $3.8 million, but is not otherwise in a position to now fix it in amount." Summ. Judg. Dec'n at 56. He went on to observe that "[t]he parties have not specifically briefed the issues surrounding the amount of other creditors' claims; whether Elite's claim would be junior to, or *pari passu* with, those other creditors' claims; and whether claims against Composite by insiders (such as the Management Company, Fletcher, Saunders and Ladner) would be senior to (or even *pari passu* with) Elite's entitlement." Summ. Judg. Dec'n at 57. Composite argues here that the Alleged Liabilities and the Alleged Reserve Amounts must be set aside from the funds from which Elite is paid the amount owing on account of Elite's

Redemption Request (*see* Supp. Opp. Brf. at 13), while the Trustee contends that the Alleged

Liabilities have not been substantiated and, for this and other reasons, should not be afforded

priority over the amount owing to Elite on account of its Redemption Request (*see* Supp. Br. at

22).

The PPM sets forth the rights of investors to redeem their shares and provides as follows:

> Payment of not less than 90% of the estimated value of the Shares
> requested to be redeemed will be made within 40 days following the
> Redemption Date for the Class of Shares which are being redeemed,
> and the remaining balance of the net redemption proceeds will be
> paid in the applicable currency within ten Business Days after the
> official Net Asset Value of the applicable Class is published, in each
> case unless redemptions are limited, deferred or suspended.

PPM at 31.  Accordingly, the amount that a shareholder, such as Elite, is entitled to receive upon

redemption is based on a calculation of the "Net Asset Value."  "Net Asset Value" is defined in

the PPM as "the total assets of the Fund,[10] including all cash, cash equivalents and other

securities (each valued at fair market value), less the total liabilities of the Fund determined in

accordance with international accounting standards, consistently applied under the accrual

method of accounting . . . ."  *Id.* at 32-33.

The Parties have concluded the focused discovery directed by Judge Gerber with respect

to the proper calculation of the Net Asset Value, which necessarily requires a determination of

the extent, if any, of the Alleged Liabilities and Alleged Reserve Amounts.   The Net Asset

Value, by definition, is determined by the formula set forth in the PPM: the total assets of

Composite, including all cash, cash equivalents and other securities (each valued at fair market

---

[10] In the instant case, the Fund refers to Composite.  The parties agree that the total assets of the fund held in the
Wilmington Trust Account as of July 31, 2016, is $3,725,607.54.  *See* ECF No. 133.

value), *less the total liabilities of Composite*.  PPM at 32-33.  Accordingly, the Net Asset Value

must be calculated as $3,725,607.54[11] <u>minus</u> the total liabilities of Composite; *i.e.* the Alleged

Liabilities (and, according to Composite, the Alleged Reserve Amounts), to the extent that any

such alleged liabilities exist.  Because Composite has not offered any competent evidence to

substantiate the Alleged Liabilities, the Court need not address the extent, if any, to which the

absolute priority rule (relied on by Composite) or equitable subordination (relied on by the

Trustee) apply to the Alleged Liabilities of Composite (a non-debtor).

### D.  Composite's Alleged Liabilities

The starting point for the Court's analysis is the finding by Judge Gerber that "Composite

owes Elite the Net Asset Value of its shares as of the close of business of September 30, 2011."

Summ. Judg. Order at ¶ 2(l).  As Composite's counsel acknowledged at the Summary Judgment

Hearing, Composite is the party responsible for determining the Net Asset Value:

> *The Court*:  At some point in time, as the entity that's obligated to calculate
>
> the net asset value, doesn't there come a time that you have an
>
> obligation to say to entities that you're telling me may have

---

[11] Judge Gerber explained that:

> Elite's contractual entitlement is to the net asset value ("NAV") as of the close of business on the relevant quarterly redemption date, not the time of any payment or of any judicial determination.  And because the value of Composite's assets has gone down since the redemption request was made, the amount Composite now could pay, net of its expenses, would be less than Elite's entitlement at the earlier time.  Obviously, Composite cannot pay more than it has.  Thus the Trustee's entitlement on behalf of Elite, Composite's only shareholder, *is effectively to everything Composite would still have left after Composite's payment of any more senior creditor claims*.

*See* Summ. Judg. Dec'n at 2, n.5 (emphasis added).  As Composite has no funds other than those held in the Wilmington Trust Account and the funds held in the Wilmington Trust Account currently total $3,725,607.54, such amount is the amount from which Composite's liabilities, if any, would be subtracted.

claims, make your claims, because I have to calculate the net

asset value to respond to the redemption request?

*Composite*: At some point in time, yes.

*See*, Tr. of August 11, 2016 Hearing at 41:19-25 (emphasis added).  The Trustee's Supplemental

Motion Papers, Composite's Supplemental Opposition Papers, the Interrogatory Responses, the

six documents produced and relied upon by Composite, and the record in this case establish that

there is no genuine issue as to any material fact with respect to the existence of, or *bona fides* of,

any of the Alleged Liabilities.  As noted above, Composite has produced all documents in its

possession that possibly could establish the existence of (or, here, create a genuine issue of

material fact as to the existence of) the Alleged Liabilities, and Composite has acknowledged

that it does not have any other documents that would support its claim that the amount owing to

Elite should be reduced by the Alleged Liabilities.  Because (i) Judge Gerber has found that Elite

is entitled to the Net Asset Value of Elite's shares in Composite as of September 30, 2011, which

is equal to the full value of the Wilmington Trust Account, subject only to a reduction for any

legitimate liabilities of Composite, (ii) there is no competent evidence in the record that would

support, much less create a genuine issue of material fact as to, the existence of any of the

Alleged Liabilities (with the exception of the Law Firm Liability), and (iii) as discussed below,

the Law firm Liability was incurred well <u>after</u> the September 30, 2011 date found by Judge

Gerber for calculation of the Net Asset Value, the Trustee is entitled to judgment that the amount

owing to Elite in connection with its Redemption Request is not subject to reduction by any of

the Alleged Liabilities.

22

In her Interrogatories, the Trustee requested that Composite identify, with respect to all persons or entities to whom any current, outstanding, unpaid or claimed payment obligation, debt or amount owed or purportedly owed by Composite: (i) the name of such person or entity; (ii) the date(s) on which such indebtedness was incurred or accrued; (iii) the amounts of such indebtedness; and (iv) the contracts, agreements, documents and any other basis or reason that gives rise to such payment obligations. *See* Interrogatory Responses at 1. Composite responded to the Trustee with a table, attached as Exhibit A to its Interrogatory Responses, which lists names of parties to whom such indebtedness allegedly is owing, the time period during which the obligation purportedly was incurred, and the amount of the alleged liability ("Table A"). *See* Interrogatory Responses at 2. Although Composite produced the six Composite Documents in support of its contentions, Composite has not explained in any of Composite's Supplemental Opposition Papers, the Interrogatory Responses, or (as discussed below) at the Supplemental Summary Judgment Hearing, which of the Composite Documents purportedly relate to or support which Alleged Liability.

During the Supplemental Summary Judgment Motion Hearing, the Court repeatedly invited Composite to explain which of the Composite Documents support which Alleged Composite Liability, but Composite's counsel, after refusing to provide answers to the Court's questions, ultimately confessed that Composite was unable to point to any evidentiary support, other than the unverified Interrogatory Responses, to support the existence of Alleged Liabilities. *See,* Tr. of August 11, 2016 Hearing.[12] Initially, Composite contended that it should not be

---

[12] The Court also notes that not a single representative of Composite was willing (or able) to verify Composite's claims that the Alleged Liabilities and Alleged Reserve Amounts actually exist, notwithstanding the Court's admonishment to Composite's counsel, at the Hearing on the Supplemental Summary Judgment Motion, that the

obligated to substantiate its claim as to the existence of the Alleged Liabilities on the basis that

the parties to whom the alleged amounts are owing should be present and tasked with

substantiating Composite's claim that Elite's recovery should be reduced by the Alleged

Liabilities.  For example, at the Supplemental Summary Judgement Hearing, the exchange

proceeded as follows:

> *The Court*:    So I'd like you to go through with me . . . each of the
> elements that you're claiming I should take into account . . .  in
> making the finding you're requesting me to make, that these are
> legitimate liabilities of Composite that need to be taken into account
> in addressing the redemption request of Elite.
>
> *Composite*:    We would submit, Your Honor, that we don't need to go
> through each of the entities, because those entities should be given
> an opportunity to be heard and establish their claims . . . .

*See id.* at 38:15-24.

> *The Court*:    How do you overcome the evidentiary - - putting aside the
> fact that I've asked you - - and I'm going to give you one last
> opportunity on the record - - to point me, with respect to each of
> these eight supposed liabilities that you list at the top of Exhibit A,
> to point me for each one to the document on which you're relying

---

Interrogatory Responses did not appear to have been verified.  Nor has any representative of Composite submitted a
declaration in support of Composite's Supplemental Opposition Papers.

on the specific part of the documents you're relying to support that

claimed liability?

*Composite:*      We would submit that the claims cannot be resolved without

hearing from those entities, because they're not before the Court.

*The Court:*      Okay.  So you're unable to point me to specific sections of

specific documents to support those liabilities.  Is that correct?

*Composite:*      We would submit that we - - they should be given an

opportunity to do so, but we cannot do so at this time.

*The Court*:      Composite cannot do so?

*Composite:*      Correct.

*Id.* at 43:11-25-44:1-4.

After failing to obtain an explanation of which of the Composite Documents purportedly

substantiate the Alleged Composite Liabilities, the Court asked Composite's counsel from where

the amounts claimed by Composite to constitute the Alleged Liabilities listed in Table A are

derived.  Composite's counsel informed the Court that the amounts were *estimates* given to

Composite at the time Composite was preparing its responses to the Interrogatories in this

adversary proceeding.  *See id.* at 44:5-12.  When the Court asked Composite's counsel whether

the documents on which those estimates were based were produced in response to the Trustee's

Document Requests, Composite's counsel stated "I'm not sure that they were based on any

documents."  *See id.* at 44-15-17.  In fact, Composite's counsel stated that although Composite

asked the parties to whom the Alleged Liabilities purportedly are owing to provide

documentation supporting the liabilities, no documentation was provided to Composite.  *See id.* at 41:17-18.

Accordingly, not only were the amounts which Composite claims that it owes to third parties not supported by documentation, Composite's counsel ultimately acknowledged that the amounts are also not conclusively supported by the Composite Documents or indeed by any documents whatsoever.  Specifically, Composite's counsel stated at the Supplemental Summary Judgment Hearing that "we recognize that those documents [*i.e.* the Composite Documents] do not conclusively establish that the amounts are owed, but as I've stated, we would submit that those parties should be given an opportunity to be heard as to those claims."  *Id.* at 45:8-11.

The Court finds that there is simply no support in the record by competent evidence (or otherwise) that creates a genuine issue of material fact as to the existence of the Alleged Liabilities (with the possible exception of the Alleged Law Firm Liability, as discussed below). Accordingly, the Court rejects what it finds to be Composite's thinly veiled attempt to further delay paying Elite the amount owing on its Redemption Request (which Judge Gerber found had been issued at least 4 years ago), on the basis that the amount owed is not subject to calculation without the involvement of alleged third party creditors.

The Court notes that the longer Composite staves off its obligation to calculate the Net Asset Value and pay over to the Trustee the funds held in the Wilmington Trust Account, the longer Composite has to attempt to divert the funds for its own benefit (*i.e.* payment of liabilities to be incurred in the future) and, quite possibly, as it already has done during the course of this adversary proceeding, for the improper benefit of its insiders and affiliates.  For example, Judge Gerber found that "Mr. Fletcher caused funds to be withdrawn from Composite's Wilmington

26

Trust account under an order authorizing only a lesser amount of funds to be withdrawn, and for different purposes. Mr. Fletcher used frozen funds not just for the purposes of paying counsel for Composite to defend it on these motions and in an investigation by the SEC (as this Court had authorized), but for a host of impermissible purposes." [13] *See* Summ. Judg. Dec'n at 13.

As discussed below, Composite has failed to create a genuine issue of material fact as to the existence of any Alleged Composite Liability, with the possible exception of the Alleged Law Firm Liability, which liability, while potentially legitimate, was incurred well past the date on which funds were due and owing to Elite by reason of its Redemption Request.

### 1. *The Alleged SCM Liability*

In its Interrogatory Responses, Composite did not explain the basis for the Alleged SCM Liability other than stating the general proposition that the amounts set forth on Exhibit A to the Interrogatory Responses "represent financial obligations incurred by Soundview Composite either [sic] pursuant to written agreements with the Person identified on Exhibit A." Interrogatory Responses at 4. Since SCM acted as investment manager to Composite, the only plausible basis for the Alleged SCM Liability is services SCM provided to Composite in this capacity.

The Trustee argues that, pursuant to the PPM, Composite may pay its investment manager (*i.e.* SCM) in respect of Class D, Class E, Class F, Class Y and Class P shares, a

---

[13] Based on Composite's improper use of Composite's funds, Judge Gerber held that SCM, Richcourt USA, Fletcher, Ladner and Saunders were in contempt of court for improperly diverting funds held in the Wilmington Trust Account. On March 23, 2016, the District Court entered an Opinion and Order dismissing the appeal as to Composite, and affirming the Contempt Order and denying the appeal as to the remaining Contemnors. *See Corinne Ball, as Chapter 11 Trustee of Soundview Elite, Ltd. v. Soundview Composite Ltd. (In re Soundview Elite Ltd.)*, No. 15 Civ. 5666 (KPF) (S.D.N.Y. March 23, 2016).

monthly management fee in a specified amount, pursuant to the terms of the Investment

Management Agreement.  *See* Supp. Brf. at 13 (citing the PPM at 14).  However, the relevant

portion of the PPM, entitled "FEES AND EXPENSES" under the sub-heading "The Investment

Manager's Fees" does not account for payment of SCM's fees in respect of the Composite

Shares (*i.e.* the Class H shares).  To this point, the PPM provides as follows:

> Fee Arrangements in respect of Class H Shares shall be separately
> negotiated by the Directors *with the holders of Class H Shares*.  This will
> not entitle the holders of Class H Shares or any holder of other Classes of
> Shares to different fee arrangements in respect of their holdings in Classes
> of Shares other than Class H.

PPM at 15.  (emphasis added)  Accordingly, any fee arrangement with SCM whereby fees would

be payable on account of the Composite Shares must have been separately negotiated with Elite,

as the only holder of the Class H Shares.  Composite has not identified, either in its Interrogatory

Responses or its Supplemental Opposition Brief, any evidence of the requisite separate

negotiations in this regard with Elite (which Elite denies to have occurred).  When asked at the

Supplemental Summary Judgment Hearing whether there were any such negotiations with Elite,

Composite's counsel replied that she was "not aware of any negotiations."  *See* Tr. of August 11,

2016 Hearing at 42:5-25-43:1.

  In the event that Composite might have relied on the Investment Management Agreement

as such separate agreement serving as a basis for the Alleged SCM Liability,[14] the Court

independently has reviewed this document and finds that it does not create any genuine issue of

---

[14] The Investment Management Agreement produced by Composite is signed only by SCM; there is no signature on
behalf of Composite.  In this regard, the extent to which SCM may enforce the terms of the agreement against
Composite is questionable.  For the sole purpose of determining the Supplemental Summary Judgment Motion, the
Court will consider the Agreement notwithstanding the issues with respect to its enforceability.

material fact as to the existence of the Alleged SCM Liability.  The Investment Management

Agreement provides, at Section 2 (*Compensation*), that, as compensation for SCM's services

under the agreement, Composite shall pay SCM "in respect of Class D, Class E, Class F, Class Y

and Class P Shares" a calendar monthly management fee in an amount equal to a calculation set

forth in the agreement.  *See* Dailey Dec'l at Exh. F (Investment Management Agreement) at

Section 2 (*Compensation*).  However, that section goes on to provide that "[t]he Fund shall not

pay the Investment Manager management or incentive fees in respect of Class H Shares."  *Id.*

Accordingly, to the extent that the Investment Management Agreement is admissible and

enforceable, it lends further support to the Court's conclusion that any amount claimed by

Composite to be owing to SCM would not be payable out of the funds otherwise owing to Elite

in connection with its redemption of Class H shares.

　　　　The Court notes the absence of any invoices from SCM, evidence of prior payments to

SCM, or any corporate records reflecting amounts purportedly owing with respect to the Alleged

SCM Liability, or so much as referencing any services provided by SCM on account of the

Alleged SCM Liability.

　　　　For all the reasons set forth above, the Court finds that there is simply no support for any

purported liability to SCM and, as such, there is no genuine issue of material fact as to the

existence of the Alleged SCM Liability.  The Court therefore concludes that the Alleged SCM

Liability should not factor into the calculation of the Net Asset Value owing to Elite.

　　　　　　2.　*The Alleged Fletcher Liability, Ladner Liability, and Saunders Liability*
　　　　　　　　*(collectively, the "Alleged Individual Liabilities")*

Composite similarly has not provided any evidence to substantiate its claim that Composite owes

the Alleged Individual Liabilities.  There is no evidence in the record that Fletcher, Ladner or

Saunders provided services to Composite during the time period referenced in Table A. Nor is there any evidence that would allow the Court to evaluate the extent to which any services allegedly provided would give rise to the corresponding amounts listed in Table A. The only evidence that appears to this Court even to have conceivable relevance to the Alleged Individual Liabilities (as Composite has forced the Court to surmise which of the Composite Documents might potentially support which Alleged Liabilities) is the Board Consent Document. However, rather than support Composite's argument, this document only gives rise to more questions about the Alleged Individual Liabilities since the Board Consent Document is dated over two years after the Alleged Individual Liabilities purportedly began to accrue in July 2012. Moreover, there are serious evidentiary issues with respect to the authenticity and admissibility of the Board Consent Document. Composite has not offered any evidence to show that the Board Consent Document ever was properly executed, was within the authority of Fletcher and Ladner (the purported signatories to the document), or otherwise binding on Composite. Composite has not offered any other evidence of the existence or amount of this purported corporate indebtedness: no corporate books or records, no evidence of board meetings, or any other services performed by Fletcher, Ladner or Saunders; no expense reports, e-mails or other evidence of meetings attended or work performed, or even any written declaration by Ladner, Saunders or Fletcher (or anyone from Composite) claiming such amounts to be owing.

Accordingly, for the reasons set forth above, the Court finds that there is simply no support for any of the Alleged Individual Liabilities and, as such, there is no genuine issue of material fact as to the existence of any of the Alleged Individual Liabilities. The Court therefore

concludes that the Alleged Individual Liabilities should not factor into the calculation of the Net

Asset Value owing to Elite.

### 3.    *The Alleged AFS and Richcourt USA Liabilities*

There is a complete absence in the record of any evidence relating to an alleged

indebtedness to AFS or to Richcourt USA.  None of the Composite Documents contain an

apparent reference to AFS or to Richcourt USA.  Composite has not produced any invoices,

corporate books or records, or any other materials or declarations referring to AFS, and, as

discussed above, has refused to provide any additional information as to the basis for these

alleged liabilities when repeatedly offered an opportunity to do so at the Supplemental Summary

Judgment Hearing.

Accordingly, the Court finds the Alleged AFS Liability and the Alleged Richcourt USA

Liability to be wholly without support and concludes that the alleged liabilities to AFS and

Richcourt USA may not be factored into the calculation of the Net Asset Value to which Elite is

entitled.

### 4.    *The RFS Liability*

There is similarly a complete absence in the record of any evidence relating to

Composite's claimed indebtedness to RFS.  Once again, Composite and its counsel have

declined to point to any evidentiary support for the Alleged RFS Liability.  The Court has

carefully reviewed the six Composite Documents produced in discovery and finds that the only

document produced by Composite that so much as mentions RFS is the Financial Services

Agreement.  *See* Dailey Dec'l, Exh. B (Financial Services Agreement).

31

As an initial matter, there are serious evidentiary issues with respect to the admissibility of the Financial Services Agreement.  First, the document appears on its face to be incomplete. The "Funds" referenced in the Financial Services Agreement are, according to the agreement, identified on Schedule A to the agreement.  However, Composite did not produce in discovery or provide the Court with Schedule A.  In addition, the copy of the agreement produced by Composite has not been signed and, in fact, does not appear to contain a signature page.  It is also unclear to the Court whether, aside from the missing Schedule A, there are any other portions of the agreement that have not been provided to the Court.  Even if it were admissible, the Financial Services Agreement does not constitute competent or even relevant evidence of the alleged liability of Composite to RFS.  According to the document, RFS was "formed for the purposes of providing financial services."  Financial Services Agreement at 1.  And the Financial Services Agreement goes on to provide that "[a]s compensation for RFS's performance of its services hereunder, the Funds (*as such entities are listed on Schedule A*) will pay RFS an annual fee at" a specified rate.  *See id.* at § 4 (Compensation).  Composite is not mentioned anywhere in the Financial Services Agreement.

Moreover, Composite has not produced any corporate books or records, any invoices, or any other document referencing Composite's purported indebtedness to RFS.

For these reasons, the Court finds that there is no genuine issue of material fact with respect to Elite's entitlement to judgment that the Alleged RFS Liability should not be taken into account in calculating the Net Asset Value to which it is entitled by reason of the Redemption Request.

32

5.   _The Law Firm Liability_

Composite's Interrogatory Responses state that the Alleged Law Firm Liability relates to

work performed between June 1, 2015 and December 31, 2015.  As evidence of the Alleged Law

Firm Liability, Composite produced the Law Firm Invoice, which is an invoice from the Law

Firm, dated January 22, 2016, in the amount of $24,169.56.  The Law Firm Invoice is addressed

to the attention of Fletcher, at Composite.  The time entries set forth on the Law Firm Invoice for

which legal fees were incurred related to the time period beginning May 7, 2015 and November

18, 2015 and reflect that a majority of the work performed by the Law Firm relates to the Law

Firm's representation of Composite, Richcourt USA, Fletcher, Ladner and Saunders

(collectively, the "Contemnors") in connection with an unsuccessful appeal of the Contempt

Order to the District Court.  Since Composite is one of the Contemnors on whose behalf the

Contempt Order was appealed by the Law Firm, to the extent that amounts set forth in the Law

Firm Invoice relate to legal fees and costs incurred solely on behalf of Composite, those fees

conceivably could constitute a valid liability of Composite.[15]   However, as noted, Judge Gerber

has found that the trade date for Elite's redemption was September 30, 2011 and "Composite

owes Elite the NAV [Net Asset Value] of Elite's shares of Composite as of close of business of

[sic] September 30, 2011," and concluded that Elite is entitled to partial summary judgment on

the basis of those findings.  Summ. Judg. Dec'n at 79, 80.  As such, the Court concludes that any

---

[15] Composite has not offered any evidence that Composite is obligated to pay legal fees of the other Contemnors in
connection with the Contempt Order or the appeal of the Contempt Order to the District Court.  And, in fact, Judge
Gerber already has determined that the individual officers and directors are not entitled to advancement of legal fees
under the operative corporate documents.  _See_ Tr. of August 8, 2014 Hearing at 36:15-38:2 [ECF No. 28].
Moreover, Composite's Articles of Association require that any indemnity provided to investment managers and
other agents be memorialized in an operative contract.  _See_ Dailey Dec'l, Exh. D., Memorandum and Articles of
Association of Soundview Composite, Ltd., dated as of May 8, 2007, at § 145 (Indemnity).  No such separate
contract appears to have been provided to the Court.

33

liabilities owed to the Law Firm that were incurred in 2015 should not be factored into a calculation of the Net Asset Value owing to Elite "as of close of business September 30, 2011." Accordingly, Elite is entitled to summary judgment that the Alleged Law Firm Liability should not be subtracted from the funds held by Composite in calculating the Net Asset Value as of close of business on September 30, 2011 to which Elite is entitled by reason of its Redemption Request.  As such, Elite is entitled to recover the full amount of Composite's funds in the Wilmington Trust Account.

### E.  Alleged Reserve Amounts

As was the case with the Alleged Liabilities, Composite has declined to identify which, if any, of the Composite Documents relate to which Alleged Reserve Amount listed in the table at the bottom of Exhibit A to the Interrogatory Responses ("Table B") or otherwise provide any support for the Alleged Reserves.  Composite has, in fact, provided no explanation of its authority to establish reserves, its past practices with respect to reserving funds, the propriety of considering reserve amounts in the calculation of the Net Asset Value owing to Elite, or the basis on which the amounts set forth on Table B were calculated.  The Court also notes that there is no evidence that, given Judge Gerber's finding (noted above), Composite owes Elite the Net Asset Value of Elite's shares in Composite as of the close of business of September 30, 2011, the Alleged Reserve Amounts, all of which relate to alleged potential future liabilities, should apply to a calculation of the Net Asset Value owing to Elite.  The Court finds that the Alleged Reserve Amounts are wholly speculative, at best, and indeed, appear to be created out of whole cloth, and as such, appear to be nothing more than yet one more transparent attempt to further delay payment to Elite.

34

At the Supplemental Summary Judgment Hearing, the Court offered Composite's counsel an opportunity to present its case with respect to the Alleged Reserve Amounts and asked Composite's counsel to identify the source of the purported reserve amounts listed on Table B. Confirming that the reserve amounts are entirely speculative, Composite's counsel replied as follows: "I believe they come from Soundview Composite's directors' representations as to potential liabilities that the fund may have." *See,* Tr. of August 11, 2016 Hearing at 49: 22-25. No evidence has been put forth demonstrating the basis for such representations and, in fact, no declaration from any of Composite's directors as to the Alleged Reserve Amounts has been submitted to the Court in connection with Composite's Supplemental Opposition Papers or otherwise provided in response to the Document Requests or Interrogatories.

Having independently reviewed the Composite Documents, the Court is aware that the PPM provides for the establishment of reserves as follows:

> The Fund may find it necessary from time to time to establish reserves for unamortized, undetermined or contingent liabilities and withhold a portion of a redeeming shareholder's redemption proceeds in respect thereof.

PPM at 19.

Although the PPM clearly provides the authority for reserving funds for "unamortized, undetermined or contingent liabilities," Composite has not offered any evidence, or any explanation, in either its Supplemental Opposition Papers or at oral argument, as to why each of the Alleged Reserve Amounts constitute unamortized, undetermined or contingent liabilities for which a reserve properly should be established.

Accordingly, the Court finds that the Alleged Reserve Amounts are purely speculative and without any support.  The Court concludes that the Alleged Reserve Amounts are not properly factored into the calculation of the Net Asset Value to which Elite is entitled by reason of its Redemption Request.

## III.   CONCLUSION

For the reasons discussed above, the Court concludes that the Trustee is entitled to summary judgment that none of the Alleged Liabilities or the Alleged Reserve Amounts should be considered in determining the Net Asset Value of the Class H class of shares, which is the amount owing to Elite on account of its Redemption Request.  In sum, the Court finds that there are no liabilities of Composite which are properly factored into the calculation of the Net Asset Value of Elite's Composite share to which it is entitled by reason of its Redemption Request.  Any such liabilities and/or reserves claimed by Composite as relevant to the calculation of Net Asset Value are wholly without support in the record.  The Court therefore concludes that the Trustee is entitled to summary judgment that, in calculating the Net Asset Value payable to Elite on its Redemption Request, Composite may not deduct any of the following amounts:

a.      the Alleged SCM Liability;

b.      the Alleged Fletcher Liability;

c.      the Alleged Ladner Liability;

d.      the Alleged Saunders Liability;

e.      the Alleged RFS Liability;

f.      the Alleged Richcourt USA Liability;

g.      the Alleged AFS Liability;

36

      h.      the Alleged D&O Reserves;

      i.      the Alleged Former D&O Reserves;

      j.      the Alleged Investment Advisor Reserves;

      k.      the Alleged Financial Service Provider Reserves;

      l.      the Alleged Future AP Costs Reserves;

      m.      the Alleged Privy Council Reserves;

      n.      the Alleged Fletcher Int'l Reserves;

      o.      the Alleged Cayman Reserves or

      p.      the Alleged Midanek Reserves.

Accordingly, the Trustee is entitled to recover the full amount of the funds held in the Wilmington Trust Account (*i.e.* $3.875 million), representing less than the lowest amount Judge Gerber found Elite is entitled to recover as the Net Asset Value of its shares by reason of its Redemption Request.

In light of the foregoing, the Supplemental Summary Judgment Motion is granted. Because granting the Supplemental Summary Judgment Motion will be dispositive of the Complaint, a bankruptcy court does not have authority to enter a final order or judgment in this case absent consent of the parties, which has not been given. Therefore, this Decision shall be treated as proposed findings of fact and conclusions of law, subject to the objection procedure set forth in FRBP 9033, and final judgment must be entered by the District Court.

**IT IS SO ORDERED.**

Dated:    November 28, 2016
     New York, New York                     *s/ Mary Kay Vyskocil*
                                     Honorable Mary Kay Vyskocil
                                     United States Bankruptcy Judge